UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

FRANCISCA SHERMAN,

                          Plaintiff,

    vs.                                       6:12-CV-292
                                                    (ATB)
POLICE OFFICER JAMES HOLT, JR.*,*

                          Defendant.

_____

LEE D. GREENSTEIN, ESQ., and MEREDITH H. SAVITT, ESQ., for Plaintiff
ANDREW L. BOUGHRUM, ESQ., for Defendant

HON. ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

      Plaintiff's complaint asserts claims of false arrest/illegal seizure, excessive force, malicious abuse of process, and illegal search in connection with her arrest on marijuana possession charges by Officer Holt on May 10, 2011 in Utica, New York. (Dkt. No. 1). On August 22, 2013, with the consent of all parties, this civil rights action was referred to me for all further proceedings, including the entry of final judgment, by United States District Judge Glenn T. Suddaby, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and Local Rule N.D.N.Y. 73.1. (Dkt. No. 28).

      Presently before this court is defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 29). Plaintiff has withdrawn her claim for malicious abuse of process, but has otherwise responded in opposition to the motion. (Dkt. Nos. 36-38). Defendants filed a reply. (Dkt. No. 40). Because there are material issues of fact with respect to the false arrest/illegal seizure, excessive force,

and illegal search claims that must be resolved by a jury, the court will deny defendant's motion for summary judgment as to those remaining claims.

I.   **<u>Summary of Facts and Contentions</u>**[1]

The following facts are not contested. At approximately 10:45 p.m. on May 10, 2011, plaintiff and her boyfriend, Adnan Durak ("Durak"), were sitting in plaintiff's automobile in the parking lot of Mohawk Valley Community College ("MVCC") in Utica. They were approached by defendant Holt, who was then operating as part of a law enforcement detail addressing a recurring problem with young people using the MVCC parking lot after hours for illicit purposes. After some interaction with plaintiff and her boyfriend, Officer Holt ordered plaintiff out of the driver's seat of the car, placed her in handcuffs, and put her in the back of his patrol vehicle. Officer Holt then ordered Durak out of the vehicle and conducted a search of the passenger compartment, which resulted in the seizure of a "roach" containing marijuana remnants from the front ash tray, and, from plaintiff's purse, a plastic bag with cut up drinking straws and white powder residue, which was later determined to be cocaine. Other officers eventually responded to the scene, and the plaintiff's handcuffs were removed. She was released and allowed to drive away from the scene after receiving an appearance ticket for possession of marijuana. On May 18, 2011, following laboratory analysis of the residue in the baggie found in her purse, plaintiff was also charged with misdemeanor cocaine possession. Both charges were ultimately

---

[1] This summary is developed based on defendant's Statement of Material Facts (Dkt. No. 29-2)–which references source documents, including depositions–and plaintiff's response thereto (Dkt. No. 38).

adjourned in contemplation of dismissal.

The parties otherwise offer widely divergent versions of the circumstances surrounding this incident. During his deposition, defendant Holt testified that he drove his marked police vehicle to a position nearby plaintiff's parked vehicle in the MVCC lot. (Holt. Dep. at 55-57).[2] He observed that plaintiff, in the driver's seat, looked at the officer as he approached her vehicle on foot, in his police uniform. The plaintiff then bent over and reached towards the center console of the vehicle in a "furtive" manner, apparently trying to conceal or grab something. (Holt Dep. at 55, 62-68). When Officer Holt reached the front driver's window, which was rolled down, he smelled "burnt marijuana," although he did not see any smoke in or around the vehicle. (Holt. Dep. at 58-59, 73, 75).

According to defendant Holt, plaintiff became belligerent towards him "right off the bat," and tried to reach towards the floor area next to the middle console, where her purse was located, notwithstanding the officer's directions for her to stop doing that. (Holt Dep. at 79-81). After repeatedly ignoring the officer's orders not to keep reaching for her purse, defendant Holt opened the driver's door, grabbed plaintiff's left arm, and guided her out of the vehicle in an effort "to gain her attention/compliance." (Holt Dep. at 82-83, 86, 88-94).

Once she was out of her vehicle, plaintiff reached into her sweat jacket pocket, causing defendant Holt to grab her arm again. The officer thinks he probably patted

---

[2] Defendant Holt's deposition is attached to defendant's summary judgment motion as Dkt. Nos. 29-7 and 29-8.

3

down that pocket, making sure plaintiff did not have a weapon. (Holt Dep. at 96-98, 100-01). During this incident, plaintiff was yelling at the officer not to touch her, and she tried to push his hand away when he went to grab her arm. (Holt Dep. at 89-90, 98). Defendant Holt thereafter handcuffed plaintiff behind her back and placed her in the rear seat of his patrol vehicle. Officer Holt testified that he restrained plaintiff in this way because, based on his detection of the odor of marijuana, he was going to search the passenger compartment of the vehicle and its passengers; plaintiff was not compliant, and, unless she was restrained, she would have impeded his search and further investigation. (Holt Dep. at 99-102, 104). Officer Holt described his use of force against plaintiff as "slight." He denied striking, kicking, pushing, or pulling her, or twisting her arms behind her back; and he testified that the plaintiff did not complain of pain or sustain any apparent injury during the incident, including while he handcuffed her. (Holt. Dep. at 87, 88, 90, 93-94, 103, 105).

Defendant Holt testified that, after he discovered marijuana in plaintiff's vehicle, Durak advised him that the plaintiff had been smoking marijuana inside the vehicle, and that Durak suspected the marijuana belonged to her. Toward the end of the Officer Holt's encounter with plaintiff, she purportedly admitted to the officer that she had smoked marijuana in her vehicle, and that the marijuana found therein belonged to her. (Holt Dep. at 113-14, 122).

The plaintiff and her boyfriend present a radically different version of what occurred on the evening of May 10, 2011. They testified that they were en route to Durak's home when plaintiff realized she could not locate her cell phone. They

4

stopped under a street light in the MVCC parking lot, where both had been students, so plaintiff could look for her phone. (Sherman Dep. at 30-31, 35, 71, Dkt. No. 29-6; Durak Dep. at 9-12, Dkt. No. 29-9). Plaintiff got out of her car, found the cell phone under the front seat, and then got back in the car, prepared to complete the trip to Durak's home. (Sherman Dep. at 36, 68-69; Durak Dep. 12).

Before plaintiff and Durak could leave, they were approached by Officer Holt, who asked them, "What the fuck are you guys doing here?" (Sherman Dep. at 36, 37; Durak Dep. at 13). Plaintiff explained they were stopped so she could look for her cell phone and defendant Holt told her, "Don't fucking lie." (Sherman Dep. at 37-38, Durak Dep. at 13). Officer Holt began to search around the driver's side door and plaintiff said to him, "You can't do that." (Sherman Dep. at 56; Durak Dep. at 13). Defendant Holt then ordered plaintiff out of the car, and plaintiff reached for her purse, purportedly so she could produce her driver's license. (Sherman Dep. at 56-57; Durak Dep. at 13-14). Plaintiff testified that she was scared, and may have raised her voice, but she did not use profane language, and she complied with all of Officer Holt's directions. (Sherman Dep. at 73-74).

Defendant Holt grabbed plaintiff's left arm, cursing, and pulled her out of the car "violently." (Sherman Dep. at 57-58; Durak Dep. at 14). Plaintiff complained that defendant Holt was hurting her, and asked if she could call her mother, which the officer did not allow. (Sherman Dep. at 58-59; Durak Dep. at 15). Officer Holt then pushed plaintiff's chest against the rear spoiler of her car, put her in a restraint, roughly handcuffed her behind her back, and put her in the back of his police vehicle.

5

(Sherman Dep. at 59, 60). Durak testified that, at this point, Officer Holt yelled at plaintiff that she was "under arrest." (Durak Dep. at 15).

As the officer handcuffed her, plaintiff heard a crack as her wrist snapped and exclaimed that he was really hurting her. (Sherman Dep. at 59; Durak Dep. at 15). Although Holt refused to release her from the handcuffs notwithstanding plaintiff's complaints that they were hurting her, other officers eventually arrived and loosened, and then later removed the cuffs. (Sherman Dep. at 60, 62-63). While the other officers were present, officer Holt stated that plaintiff pushed him; but both the plaintiff and Durak stated that she did not push the officer. (Sherman Dep. at 62; Durak Dep. at 20).

Both Sherman and Durak denied that they smoked marijuana in plaintiff's car. (Sherman Dep. at 37, 41; Durak Dep. at 13). Both denied knowing that there was a "roach" of marijuana in the car, and plaintiff testified that she could not smell marijuana in the car.[3] (Sherman Dep. at 37; Durak Dep. at 13, 17). Durak denied the marijuana found in the car belonged to him, but testified that he did **not** tell Officer Holt that it belonged to the plaintiff. (Durak Dep. at 19).

## II.  **Summary Judgment–Legal Standards**

Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Salahuddin v. Goord*, 467 F.3d 263,

---

[3] Durak was not asked during his deposition whether plaintiff's car had an odor of marijuana. Defendant has not offered testimony or affidavits from other officers on the scene as to whether the vehicle smelled of marijuana.

6

272–73 (2d Cir. 2006). "Only disputes over ["material"] facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994).

The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Salahuddin v. Goord*, 467 F.3d at 273. In that context, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). However, in determining whether there is a genuine issue of material fact, a court must resolve all ambiguities, and draw all inferences, against the movant. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Salahuddin v. Goord*, 467 F.3d at 272.

### III. <u>False Arrest/Illegal Seizure</u>

#### A. **Legal Standards**

The court generally looks to the law of the state in which the arrest occurred when analyzing civil rights claims under 42 U.S.C. § 1983 for false arrest. *Jaegly v. Couch*, 439 F.3d 149, 151-522 (2d Cir. 2006). The elements of false arrest require the

7

plaintiff to establish that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Weyant v. Okst*, 101 F.3d 845, 853 (2d Cir. 1996).

An officer may, consistent with the Fourth Amendment and *Terry v. Ohio*, 392 U.S. 1, 30 (1968), briefly detain an individual "if the officer has a reasonable suspicion that criminal activity may be afoot." *United States v. Colon*, 250 F.3d 130, 134 (2d Cir. 2001). During an investigatory stop, "[t]he investigating officer may also frisk an individual for weapons if the officer reasonably believes that person to be armed and dangerous." *Id*. In determining whether an investigatory stop is sufficiently intrusive to ripen into a *de facto* arrest that must be supported by probable cause, the Second Circuit considers the "amount of force used by the police, the need for such force, and the extent to which an individual's freedom of movement was restrained, and in particular such factors as the number of agents involved, whether the target of the stop was suspected of being armed, the duration of the stop, and the physical treatment of the suspect, including whether or not handcuffs were used." *United States v. Perea*, 986 F.2d 633, 645 (2d Cir. 1993); *U.S. v. Vargas*, 369 F.3d 98, 101 (2d Cir. 2004).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant v. Okst,* 101 F.3d at 852. "An arrest is supported by probable cause 'when the officers have knowledge of, or reasonably trustworthy

information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested.'" *Kilburn v. Village of Saranac Lake*, 413 F. App'x 362, 363 (2d Cir. 2011) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). A court looks to the "'totality of the circumstances' in deciding whether probable cause exists for an arrest." *Id.* (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "The mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).

### B. Application

Plaintiff apparently does not contest that defendant Holt, while part of a detail addressing a recurring problem of illegal conduct after hours in the MVCC parking lot, had sufficient cause to approach plaintiff's car, in which two young people were parked at 10:45 p.m. on a Tuesday evening. The court will also assume that the officer also had reasonable suspicion that justified questioning plaintiff and her boyfriend and briefly detaining them to determine whether any illegal conduct was occurring. However, extending the detention of plaintiff to the point where plaintiff was handcuffed and placed in the back of defendant Holt's vehicle would require substantial additional justification or probable cause to arrest.

As discussed further below, if Officer Holt's detection of the smell of "burnt"

marijuana from plaintiff's car was an uncontested fact, it would support a search of the passenger compartment. However, even crediting defendant Holt's observation of plaintiff's "furtive" movements, his detection of the odor of marijuana would not provide probable cause to arrest the plaintiff for possession of that drug, before the officer's discovery of a "joint" in the ashtray, without some other evidence that someone had been smoking marijuana in the car. *See, e.g.,* Wayne R. LaFave, 2 Search & Seizure: A Treatise On the Fourth Amendment, § 3.6(b) & n.44 (5th ed. 2012) ("The detection of the odor of marijuana in a certain place will not inevitably provide probable cause to arrest a person who is at that place. . . . Similarly, it has been held . . . that a passenger in an automobile may not be arrested simply because the odor of marijuana is emanating from the car.")[4]; *People v. Tyrell*, 11 Misc.3d 1052(A), 814 N.Y.S.2d 892 (Table), 2006 WL 344446, at *8 (N.Y. Sup. 2006) (finding no authority in this jurisdiction for the proposition that the odor of marijuana emanating from a residence alone provides probable cause to arrest every occupant of the residence in the absence of other information linking the marijuana to that individual); *White v. Stanley*, 11 C 50057, 2013 WL 1787556, at *4 (N.D. Ill. Apr. 25, 2013) (the record states that defendants simply smelled burned marijuana in the vicinity of plaintiff's home and there are no additional factors on the record which would have permitted the officers to localize the source of that smell to plaintiff himself; accordingly, the smell by itself was insufficient to create probable cause to

---

[4] This portion of the LaFave treatise is published in WestLaw at SEARCHSZR § 3.6(b).

arrest).⁵

"[A]lthough '[u]nder ordinary circumstances, . . . using handcuffs [is] not part of a *Terry* stop[,] intrusive and aggressive police conduct' is not an arrest 'when it is a reasonable response to legitimate safety concerns on the part of the investigating officers.'" *U.S. v. Vargas*, 369 F.3d at 102. "[M]inimizing the risk of harm to officers," as well as facilitating "the orderly completion of the search" are accepted and legitimate reasons for detaining an individual. *Michigan v. Summers*, 452 U.S. 692, 702-03 (1981). If defendant Holt's statements regarding plaintiff's belligerence, non-compliance, and attempted physical resistance were uncontested, they might well provide sufficient justification for handcuffing plaintiff and placing her in the patrol vehicle, even in the absence of probable cause to arrest.⁶ However, the deposition

---

⁵ In the alternative, if the officer's detection of the odor of marijuana and the plaintiff's "furtive" movements created probable cause to arrest plaintiff for unlawful possession, the factual dispute as to whether the plaintiff's vehicle smelled of burnt marijuana would, as discussed below, preclude a grant of summary judgment. *See,, e.g., Kent v. Katz*, 312 F.3d 568, 576 (2d Cir. 2002) (upholding denial of police officer's motion for summary judgment based on qualified immunity in connection with a false arrest claim because of disputed issues of fact regarding the existence of probable cause to believe that plaintiff had been driving while intoxicated, including competing statements of the officer and other witnesses as to whether plaintiff smelled of alcohol).

⁶ *See, e.g., Riordan v. Joyner*, 3:02CV1132, 2005 WL 752210, at *5 (D. Conn. Mar. 31, 2005) (Riordan's detention in handcuffs was a permissible *Terry* stop on two grounds: (1) to prevent him from disrupting the investigation of Bruzy; and (2) to determine if Riordan had any role in the suspected criminal activity); *Watson v. Cieslak*, 09 Civ. 2073, 2011 WL 446276, at *4-5 (S.D.N.Y. Jan. 5, 2011) (it was undisputed that it was necessary to handcuff the plaintiff when he became very agitated during the search of his residence; thus, plaintiff's handcuffing did not constitute an arrest for the purposes of Fourth Amendment analysis and summary judgment in favor of the defendants on his false arrest charges should be granted); *Evans v. Solomon*, 681 F. Supp. 2d 233, 246 (E.D.N.Y. 2010) (plaintiff did not contest that he became "very upset" after the search for his wallet and did not comply with the officers' direction to stop pacing back and forth the length of his vehicle; placement in handcuffs and the police vehicle "for his own safety" did not transform a permissible traffic stop into an unconstitutional false arrest).

11

testimony of the plaintiff and her boyfriend provide contrary evidence indicating that the plaintiff was compliant with Officer Holt's directions and provided no cause for him to handcuff and detain her, particularly after he confirmed that she possessed no weapon. Given the disputed issues of fact that are material as to whether defendant Holt exceeded the scope of a permissible *Terry* stop by handcuffing and detaining plaintiff, the court cannot grant summary judgment in favor of the defendant. *See, e.g., Lee v. City of New York*, 00-CV-3181, 2002 WL 1732810, at *5-6 (E.D.N.Y. July 22, 2002) (because the parties present conflicting accounts of the detention, the issue of whether plaintiff was subjected to a *de facto* arrest must go to the jury); *Cooper v. City of New Rochelle*, 925 F. Supp. 2d 588, 609 n.15 (S.D.N.Y. 2013) (because there are issues of fact regarding the events that transpired after the stop of Cooper's vehicle, the court cannot resolve the issue of whether, assuming *arguendo* that Smith was immediately handcuffed, such conduct constitutes an unlawful seizure).

## IV. <u>Excessive Force</u>

### A. **Legal Standards**

The right under the Fourth Amendment to be free from unreasonable search and seizure prohibits the use of excessive force by law enforcement in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Applying the "test of reasonableness" to an analysis of a Fourth Amendment claim "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade

arrest by flight." *Id.* at 396 (citations omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham* and listing the three factors). Because the inquiry of whether force was excessive is by nature fact-specific, granting summary judgment on an excessive force claim is not appropriate unless "no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 123 (2d Cir. 2004) (citing *O'Bert v. Vargo*, 331 F.3d 29, 37 (2d Cir. 2003).

### B. Application

As discussed above, there are substantial, disputed issues of fact regarding the nature and extent of the force used by defendant Holt and whether plaintiff failed to comply with the officer's direction or physically resisted his efforts to gain her compliance. Even if it were ultimately determined that Officer Holt was justified in handcuffing plaintiff, he could be found to have applied excessive force depending on whether the handcuffs were unreasonably tight; whether he ignored pleas that the handcuffs were too tight; and whether he caused injury to the plaintiff's wrists–all of which also involve disputed issues of fact. *See, e.g.*, *Esmont v. City of New York*, 371 F. Supp. 2d 202, 214-15 (E.D.N.Y. 2005) (collecting cases regarding when the application of handcuffs in connection with a lawful arrest can constitute excessive force). The contested issues of fact which are material to whether the defendant applied excessive force to plaintiff clearly preclude a grant of summary judgment with respect to that claim.

## V. Illegal Search

### A. Legal Standards

Warrantless searches "are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971). Under the automobile exception, "police may conduct a warrantless search of a readily mobile motor vehicle if probable cause exists to believe the vehicle contains contraband or other evidence of a crime." *United States v. Gaskin*, 364 F.3d 438, 456 (2d Cir. 2004) (citing *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam)).

### B. Application

Defendant Holt testified that his detection of the smell of "burnt" marijuana from inside plaintiff's automobile was "the only evidence . . . that allowed [him] to search her and her car." (Holt. Dep. at 123). The odor of burning marijuana gives police officers probable cause to search any area of an automobile where marijuana could be found. *See, e.g., U.S. v. Mitchell*, 11-CR-6019, 2012 WL 6827387, at *7 (W.D.N.Y. Nov. 27, 2012) (collecting cases); *U.S. ex rel. Thompson v. Village of Spring Valley, N.Y.*, 05 Civ. 2005, 2006 WL 1889912, at *3 (S.D.N.Y. July 10, 2006) (under New York law, the smell of marijuana is sufficient to provide a police officer with probable cause to search a vehicle and its occupants if the officer is trained and experienced in the area of narcotics).

Although it is a close question, the court finds that there is an issue of fact as to whether plaintiff's vehicle actually smelled of burned marijuana, which precludes

summary judgment in favor of defendant on plaintiff's illegal-search claim.
Defendant Holt's claim that plaintiff's vehicle smelled of "burnt" marijuana (although he saw no smoke) was corroborated by the fact that the officer ultimately found a "joint" with remnants of marijuana in the ashtray of her car. However, plaintiff denied that her vehicle smelled like marijuana, and both she and her boyfriend ("Durak") denied that anyone had been smoking marijuana in the vehicle.[7] Officer Holt admitted that his reports did not indicate that the "roach" he seized from the car was hot to the touch, nor did he cite any other evidence that it had been recently lit. (Holt Dep. at 127-28). Although several other officers came to the scene after defendant Holt conducted his search, defendant has not submitted any statements corroborating his claim that plaintiff's car smelled of marijuana. Officer Holt claimed that the plaintiff ultimately admitted smoking marijuana in her car; however, he took no steps to investigate whether she was driving while impaired by the use of that drug, and allowed her to drive away from the scene. (Holt Dep. at 114-15, 122-23, 125).[8]

Plaintiff takes the position that defendant Holt falsely claimed he smelled marijuana from her vehicle to justify his search and other subsequent conduct. (See

---

[7] As noted above, Durak also denied telling Officer Holt that plaintiff had been smoking marijuana in the vehicle, as the officer claimed.

[8] During his deposition, Officer Holt testified that just because someone smokes marijuana does not mean that they are impaired under the applicable provisions of the New York Vehicle and Traffic Law. (Holt. Dep. at 115). He also stated that he would not have been comfortable with charging the plaintiff with driving while impaired by drugs because he was not a trained drug recognition expert. (Holt. Dep. at 115-17, 126-27). Arguably, the officer's admitted lack of expertise might limit his ability to detect the odor of marijuana for the purpose of establishing probable cause under New York law.

15

Pl.'s Mem. of Law at 10, 14-15, Dkt. No. 37; Holt. Dep. at 125). While conclusory and unsubstantiated claims that the defendant fabricated evidence could not defeat his summary judgment motion,[9] the conflicts between the testimony of Officer Holt and plaintiff and her boyfriend regarding whether anyone had been smoking marijuana in plaintiff's vehicle and whether it smelled of burnt marijuana create a material issue of fact that will require a jury to assess the credibility of the various witnesses. *See, e.g.*, *Smith v. City of Oak Hill, Fla.,* 6:11-CV-1332-Orl-31, 2013 WL 140232, at *7 (M.D. Fla. Jan. 11, 2013) (given that plaintiff disputed the defendant officer's claims that they smelled marijuana in his vehicle and the evidence that provided some support for plaintiff's allegation that the officers conspired to agree they smelled marijuana to justify their search, there was a material issue of fact as to whether there was probable cause for the search); *Radwan v. County of Orange*, SACV 08-0786 AG, 2010 WL 3293354, at *10 (C.D. Cal. Aug. 18, 2010) (there was a disputed issue of fact about whether defendant actually smelled marijuana on plaintiff before searching him; the circumstances of the incident permitted a reasonable inference that defendant could not have smelled the small amount of marijuana in a sealed container in plaintiff's pocket). *See also Kent v. Katz*, 312 F.3d 568, 576 (2d Cir. 2002) (denying summary judgment on a false arrest/qualified immunity claim because a factfinder would not be required to credit the defendant officer's purported observations, *inter alia*, that the plaintiff smelled of alcohol, but could instead believe plaintiff and his witnesses

---

[9] *See, e.g., Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) (to defeat summary judgment, nonmoving parties may not rely on conclusory allegations or unsubstantiated speculation).

whose evidence was squarely to the contrary).

## VI. <u>Qualified Immunity</u>

### A. Legal Standards[10]

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Kelsey v. County of Schoharie*, 567 F.3d 54, 60–61 (2d Cir. 2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). If, as in this case, the constitutional rights invoked were clearly established, courts "analyze the objective reasonableness of the officer's subjective belief in the lawfulness of his actions." *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002). "If the officer reasonably believed his actions did not violate the plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken." *Id*. Such a belief is objectively reasonable "if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Officers accused of Fourth Amendment violations relating to arrests or searches are entitled to qualified immunity when they have "arguable probable cause," which exists if either of two conditions are met: "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the

---

[10] The discussion of the applicable legal standards draws heavily on the opinion in *Dolan v. Cassella*, _ F. App'x _, 2013 WL 6150763, at *1-2 (2d Cir. Nov. 22, 2013).

probable cause test was met." *Jean v. Montina*, 412 F. App'x 352, 354 (2d Cir. 2011) (*citing Amore v. Navarro*, 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted).

### B. Application

In determining whether qualified immunity applies, the court may first consider whether "the facts alleged show the [defendant's] conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201(2001), modified by *Pearson v. Callahan*, 555 U.S. 223, 236-37 (2009) (holding that, "while the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory in all cases"). Given the disputed factual issues in this case, the court has concluded that a reasonable trier of fact could conclude that the defendant did violate plaintiff's constitutional rights, as alleged.

"[I]n the absence of a material factual dispute, the question of whether it was objectively reasonable for the officers to believe that they did not violate the plaintiff's rights is a purely legal determination for the court to make." *Lennon v. Miller*, 66 F.3d at 422. However, many contested issues of fact in this case clearly relate to whether Officer Holt could have reasonably thought that his actions were consistent with the plaintiff's constitutional rights. Accordingly, summary judgment with respect to defendant's assertion of qualified immunity must be denied. *See, e.g., Barksdale v. Colavita*, 506 F. App'x 82, 85 (2d Cir. 2012) (because the facts in dispute are "material to a determination of reasonableness," summary judgment based on qualified immunity should not have been granted); *Yanez v. City of New York*, 29

F. Supp. 2d 100, 110 (E.D.N.Y. 1998) (given the question of fact that remained to be resolved as to whether probable cause existed to support the arrest of plaintiff and the shifting accounts of the circumstances of the arrest, summary judgment based on qualified immunity was denied as to the officers actively involved in the arrest).

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's claim for malicious abuse of process is **DISMISSED**, based on plaintiff's withdrawal of that claim,

**ORDERED**, that defendant's motion for summary judgment (Dkt. No. 29) is otherwise **DENIED**.

Dated: December 12, 2013

Hon. Andrew T. Baxter
U.S. Magistrate Judge